OPINION
{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which found that there was not probable cause to believe that James Cline, a minor, had committed felonious assault. The court's decision followed a judgment from this court in which we remanded for the juvenile court to explain the basis for its earlier finding that probable cause had not been shown.
 {¶ 2} As we stated in our prior opinion, a juvenile may be bound over to be tried as an adult if he committed an act that would be a felony if committed by an adult and if all of the following additional criteria are met: 1) the child was fourteen years of age or older at the time of the act; 2) there is probable cause to believe that the child committed the act charged; and 3) there are reasonable grounds to believe that the child is not amenable to care or rehabilitation in a facility designed for delinquent children and the safety of the community may require his confinement for a period extending beyond the child's majority. See former R.C. 2151.26(C). The first element, Cline's age at the time of the offense, is undisputed and makes him eligible to be bound over to be tried as an adult. The juvenile court has not yet considered the third issue. All of the proceedings thus far have focused on the existence of probable cause.
 {¶ 3} As stated in our prior opinion, the state called Monica Claxton and Dayton Police Officer Kevin Cooper at the probable cause hearing. Claxton testified to the following version of events.
 {¶ 4} Claxton, Tommy Duncan, Cline, and others had been drinking beer together at Claxton's house late in the evening on August 17, 2001. Paul Graham was a homeless man who typically slept at commercial property near Claxton's home and with whom she was acquainted. Graham came to the house more than once through the course of the evening asking for beer. Duncan required Graham to bark like a dog or to sing before giving him beer.
 {¶ 5} Near midnight, after Graham had left the party and then returned again for another beer, Duncan attacked him in the yard of Claxton's house, getting "on top of him hitting him" and giving him a bloody and possibly broken nose. Claxton told both men to leave, but only Graham did. Claxton testified that Graham had walked away without assistance. About this time, Cline disappeared from the party for ten to fifteen minutes. When Cline returned, he had blood on his hands and stated to Claxton, "I think I killed the guy." Cline indicated to Claxton that the attack had occurred at the nearby corner of Troy and Dell Streets. Claxton headed toward the corner in question but turned back when she saw that there were police cars at that location. The next day, after she learned that the police knew that she might have information about the crime, Claxton called the police to report what she knew about Graham's attack.
 {¶ 6} Officer Cooper testified that he had been informed by citizens about "a dead body" at the corner of Troy and Dell Streets in the early morning hours of August 18, 2001. He testified that there had been a large amount of blood on the ground around Graham's head and that he had searched for a trail of blood in an effort to see where the attack had begun. He stated that there had been a few relatively small drops of blood down the block, but not enough to follow. Cooper could not say whether the droplets led toward or away from the location where Graham was found. To Cooper's knowledge, Graham had remained in a coma since the time of the attack.
 {¶ 7} In finding that the state had not established probable cause to believe that Cline had committed the act of attacking Graham, the juvenile court focused on Duncan's altercation with Graham at Claxton's house and its belief that Graham's collapse might have resulted from that altercation. The juvenile court has also steadfastly maintained that Duncan and Cline both left Claxton's house for ten to fifteen minutes around the time of the attack. For these reasons and others, the juvenile court has now twice declined to find probable cause that Cline attacked Graham. We find the juvenile court's conclusions to be unsupported by the evidence.
 {¶ 8} Although both the state and this court have pointed out factual errors in the juvenile court's initial judgment entry, the court made the same mistaken factual findings on remand. Most notably, the juvenile court maintained that the evidence established that both Cline and Duncan left Claxton's house and were gone for fifteen to twenty minutes around the time of the attack. Thus, the court concluded that either man could have committed the assault. There is simply no evidence to support this version of events. No one testified that Duncan had left Claxton's house around the time of the attack. Claxton testified that Duncan had left only after Cline had returned with blood on his hands and had made the comment about killing "the guy" and after she had noticed police officers at the scene of the attack.
 {¶ 9} The juvenile court also asserted that it was unclear to whom Claxton was referring when she testified that blood had been on his hands and that it was unclear "who she indicated that he had killed, or who's [sic] blood it was." In this respect, the record is more clear than the trial court's description of the problem. Claxton unequivocally testified that Cline had had blood on his hands. Claxton also testified that Cline had identified a particular location at which the attack had occurred and that she had observed police officers at that location moments after Cline's statements. Officer Cooper testified that this location was the one at which police officers had found Graham on April 18, 2001. This evidence strongly supports the inference that the blood on Cline's hands was Graham's blood.
 {¶ 10} The juvenile court alludes to the fact that Cline's "mere presence at the scene," physical closeness to the crime, and "knowledge of [Graham] being attended to by the police" were insufficient to show probable cause. The state, however, did not rely on any of these alleged arguments in building its case against Cline. The state presented much stronger and more direct evidence about Cline's involvement. The court also gave substantial weight to its own theory that Duncan's initial blows to Graham at Claxton's residence might have led to his subsequent, and much bloodier, collapse down the street. No direct evidence was presented about this theory, and it ignores Officer Cooper's testimony about the lack of blood evidence leading toward or away from the place where Graham was discovered.
 {¶ 11} Finally, in our view, the juvenile court placed undue emphasis on the fact that there may have been probable cause to believe that Duncan had committed the most serious attack on Graham or that Duncan's initial attack on Graham at Claxton's residence had resulted in his subsequent coma. Even if the evidence had established probable cause to believe that Duncan had caused Graham's serious injuries (and we do not believe that it does), such a finding would not necessarily have precluded a finding of probable cause as to Cline. Indeed, we are baffled by the trial court's refusal to find probable cause in this case.
 {¶ 12} Based on the evidence presented, we find that probable cause clearly did exist to believe that Cline had feloniously assaulted Graham. Thus, pursuant to App.R. 12(B), we will reverse the judgment of the juvenile court and remand this matter to the juvenile court for (1) entry of a finding of probable cause that James Cline feloniously assaulted Paul Graham and (2) consideration of whether Cline is amenable to treatment in a facility designed for the treatment of delinquent children and whether he is a danger to the community requiring confinement beyond the age of majority.
BROGAN, J. and YOUNG, J., concur.